DOMENGEAUX, Judge.
Arthur C. Esteve, Sr. commenced this survival action as the surviving spouse of Anna Belle Latiolais Esteve. Esteve sought damages for alleged acts of medical malpractice which resulted in irreversible brain damage to Anna Belle. This suit, which named only the Iberia General Hospital, formerly the Iberia Parish Hospital, as a defendant, was filed subsequent to compliance with the requisite administrative procedures mandated by Louisiana’s Medical Malpractice Act, La.R.S. 40:1299.41 et seq.
The children of Anna Belle, Arthur Es-teve, Jr., Genie Esteve Comeaux, Jeanie Esteve Bourg, Anna Belle Boudreaux and Lewis Esteve, filed a similar suit subsequent to their father’s action. The suits of Esteve and his children, respectively numbered by the Clerk of Court for the Sixteenth Judicial District Court as 55,186 and 55,345 and numbered by our Clerk as 87-1162 and 87-1163, were consolidated prior to trial.
Anna Belle Esteve, at the time of the event in question, February 1, 1979, was a fifty-seven-year-old woman with an approximately thirty year history of epilepsy and a twenty year history of asthma. On the morning of February 1,1979, between 7:00 and 7:30 Anna Belle experienced at least one grand mal convulsion and was rushed by ambulance to the Iberia General Hospital. The expert medical testimony, including the testimony of her treating physician, Dr. G. Douglas Sagrera, described and diagnosed her condition as Status Epilepti-cus. Status Epilepticus is a condition in which one major epileptic seizure succeeds another with little or no interruption.
The evidence is conflicting as to whether Anna Belle ever regained consciousness. Anna Belle’s treating physician, Dr. Sagr-era suggested that she had begun to come out of the seizures, but other witnesses, the ambulance attendant, the head emergency room nurse and members of her family, to name only a few, testified that they never saw her enter a postictal state. A postictal state is a condition experienced by seizure victims subsequent to their seizure. It is characterized by a deep sleep or extreme drowsyness, but during which time the patients are generally subject to being aroused.
The principle question which confronted the jury was whether Anna Belle suffered a cerebral vascular accident, a stroke, *729 which caused her brain damage or whether, as the plaintiffs maintain, she aspirated vomit which was not suctioned from her airway, thereby, inhibiting the ability of her lungs to provide her body, particularly her brain, with the oxygen necessary to sustain life. It must be noted at this point that Anna Belle did not die until March of 1982, but the brain damage she suffered on February 1, 1979 left her in a vegetative state.
The Trial Court, subsequent to a nine to three jury verdict, rendered judgment in favor of the plaintiffs for $159,770.50, with legal interest from January 4, 1982. The judgment further provided that the liability of Iberia General Hospital be limited to $100,000.00 because the hospital was a “qualified health care provider” pursuant to La.R.S. 40:1299.42(B)(2) (1975) (amended 1976 and 1984). The judgment concluded with a decree ordering the Louisiana Commissioner of Insurance to comply with the provisions of La.R.S. 40:1299.44(B) (1975) (amended 1976,1977 and 1984) and compensate the plaintiffs from the Louisiana Patient’s Compensation Fund for all sums in excess of $100,000.00.
Iberia General Hospital and Anna Belle’s children both sought review of the Trial Court judgment. Subsequent to lodging their appeal, however, the children and their father settled with the Louisiana Commissioner of Insurance, the administrator of the Patient’s Compensation Fund, for the full sum determined by the jury. The children dismissed their appeal. Es-teve, the surviving spouse, participated in the “Receipt and Release” with the children and the State, but reserved all rights he might have against Iberia General Hospital for the wrongful death of his wife.
On appeal, the only assignments of error before us are those assigned by the defendant-hospital. The hospital maintains that the judgment of the lower court should be reversed on the following grounds:
(1)The Trial Court was manifestly erroneous in discharging a member of the jury prior to the time the jury retired to deliberate;
(2) The jury was manifestly erroneous when it concluded that Iberia General Hospital breached its duty of care owed Anna Belle Latiolais Esteve;
(3) The jury was manifestly erroneous in concluding that the care and treatment provided Anna Belle Latiolais Esteve caused her injuries; and
(4) The jury was manifestly erroneous in failing to conclude that the damage sustained by Anna Belle Latiolais Es-teve was caused by her treating physician, Dr. G. Douglas Sagrera.
The initial issue on appeal addresses the decision of the Trial Judge to dismiss a juror and assign one of two alternates to deliberate on the verdict. The Trial Judge excused juror Robert Pelous, subsequent to a motion filed by the plaintiffs, because Pelous, during a recess, spoke with Todd Rossi, the attorney for the hospital, to request his business card. Although Rossi did not initiate the interaction and advised Pelous that he would have to refrain from speaking with him until the conclusion of the trial, the Trial Judge determined that it was appropriate to excuse Pelous. The Trial Judge was motivated, as is evident from a review of the transcript, to avoid the necessity of incurring a repeat of the four-day trial.
Subsequent to our review of the law and the facts surrounding the excusing of juror Pelous, we do not believe the Trial Judge was manifestly erroneous. Trial Judges are given broad discretion to determine the qualifications and grounds for dismissal of jurors and we fail to conclude that Judge Bienvenue was clearly wrong. See, La.R. S. 13:3041 (1950); La.Code Crim.Proc. art. 401 (1967) (amended 1972 and 1984) and art. 787 (1967); State v. Edwards, 419 So. 2d 881 (La.1982); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); State v. Labostrie, 358 So.2d 1243 (La.1978).
The remaining issues on appeal call into question the verdict of the jury. Prior to turning to the issues of duty and causation, however, we believe it is incumbent upon us to first address the appellant’s assignment questioning the negligence of the treating physician, Dr. Sagrera.
*730 As one of its assignments of error the appellant urges that any damages incurred by Anna Belle Esteve were caused by her treating physician. The appellant also urges that the care and treatment provided by the hospital did not cause any damages suffered by her, in fact, the appellant urges that the care and treatment provided by the hospital was proper and adequate under the circumstances. The treating physician, Dr. Sagrera, was not made a defendant and was not made a third-party-defendant. Consequently, we are concerned only with any liability which the defendant hospital may have.
The duty and causation questions presented the jury necessitated inquiry into the care and attention Anna Belle received. See, Smith v. State, Department of Health and Human Resources Administration, 523 So.2d 815 (La.1988). The jury determined that the care fell below the standard which she should have received and that as a result of the breach Anna Belle suffered irreversible brain damage. Although we believe this was a very difficult decision for the jury, just as it was for us, we are unable to conclude that the jury was manifestly erroneous. Virgil v. American Guarantee and Liability Co., 507 So.2d 825 (La.1987); Arceneaux, supra.
The plaintiffs presented evidence indicating that Anna Belle suffered brain damage as a result of the failure of the hospital staff to suction her airway. The testimony established that Anna Belle’s condition should have placed the hospital staff on guard that she might aspirate vomit. The evidence further established that when Anna Belle was transferred from her “floor room” to Iberia General's Intensive Care Unit fluids and material suctioned from her airway included vomit.
The hospital attempted to rebut the plaintiffs’ case-in-chief, but was unable to affirmatively prove that Anna Belle had received the proper medical attention. The evidence received on behalf of the hospital was primarily expert testimony by persons not directly involved with her care during the critical period in question. The weakest link in the hospital’s chain of evidence was the lack of detailed record keeping of all of the attention Anna Belle received. Speaking in terms in which medical personnel are accustomed, the “charting” of the care Anna Belle received had deficiencies. We must note for the record, however, that deficient record keeping in and of itself does not establish a plaintiff’s case. See, Trichel v. Caire, 427 So.2d 1227 (La.App. 2nd Cir.1983), writ denied, 434 So.2d 1094 (La.1983).
We are aware that the demands on “floor nurses” are great, particularly when a patient in the condition of Anna Belle Esteve is placed in their care. Notwithstanding the pressures placed on the hospital staff in this instance, we are unable to conclude that the decision of the jury is clearly erroneous.
For the above and foregoing reasons the judgment of the District Court is affirmed.
All costs of this appeal are assessed against the appellant, Iberia General Hospital.
AFFIRMED.